CHARLES H. HAYDEN vs. THE FAIR HAVEN AND WEST-VILLE RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An appeal to this court will not be abated on the ground that the date of the term to which it is taken is not expressly alleged therein, provided it is stated by clear and necessary implication.

The case of In re Shelton Street Ry. Co., 70 Conn. 329, distinguished.

A pedestrian on the sidewalk is not entirely free from the duty of exercising some care with reference to the traffic in the street. The degree of care required may vary with changing conditions; but whether in the street or on the sidewalk, he is bound to take such care to avoid injury to himself as a reasonably prudent man would exercise under like circumstances.

The plaintiff, an adult, while standing on the sidewalk at a street corner, was struck and injured in the leg by the running-board of one of the defendant's long double-truck cars, which, as it slowly rounded the corner, overlapped the sidewalk about two feet. *Held* that an instruction to the jury, to the effect that the plaintiff while standing on the sidewalk was bound to take such care as would be exercised by a reasonably prudent man in his situation, was correct in law and sufficient for the guidance of the jury in the case before them ; and that a request to charge that the defendant was bound to exercise in respect to the plaintiff the same degree of care it would be bound to take in regard to its passengers, was properly refused.

With regard to the care required of the defendant, the court charged the jury that if the running-board of the car while rounding the corner extended over a part of the sidewalk, it was the defendant's duty to use reasonable care to prevent injury thereby to any person standing on the sidewalk; that reasonable care might mean great care, depending upon the circumstances; and that the greater the overlapping, the greater the degree of care which must be exercised. *Held* that this was a fair statement of the law, and well adapted to the issues and claims before the jury.

A motorman has the right to presume that upon due warning being given of the approach of his car, an adult on the track, or in a position near the track—whether in the street or on the sidewalk—where he is likely to be struck, will exercise reasonable care and move from his position of danger; and he may rely upon that presumption until it is apparent, or by the exercise of reasonable diligence ought to be apparent to him, that the person continues in a position of danger and is not aware of it, or is so situated that he cannot avoid it.

The mere use by a street-railway company of a car which overlaps the sidewalk at certain corners, is not of itself negligence, provided such car is of the kind in general and ordinary use by other companies engaged in like business, and is operated in a proper and careful manner.

An objection that the charge as a whole is erroneous, is too general, and raises no question which this court is bound to consider.

A witness was asked whether the motorman could have seen the plaintiff where he stood. *Held* that the question was properly excluded as calling for a conclusion, without showing that the witness was in any position to draw it.

The defendant introduced in evidence an order of the common council authorizing it to locate its track at the point in question. *Held* that this was admissible to show that it was the only location given by the lawful authorities, and that to that extent at least was not a negligent location, as claimed by the plaintiff.

The plaintiff cannot recover punitive damages for a personal injury occasioned by the defendant's negligence, if the complaint alleges no malicious, culpable or wanton misconduct upon the part of the defendant.

Argued October 27th, 1903—decided January 6th, 1904.

ACTION to recover damages for personal injury alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New Haven County and tried to the jury before *Robinson, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

In this court the appellee filed a plea in abatement, on the ground that the appeal failed to state the time of the sitting of the court to which it was taken, to which the appellant demurred. *Demurrer sustained.*

*Henry G. Newton* and *Harrison Hewitt*, with whom was *Phelps Montgomery*, for the appellant (plaintiff).

*Harry G. Day* and *Henry F. Parmelee*, for the appellee (defendant).

TORRANCE, C. J. The plea in abatement and the demurrer thereto will first be considered.

The statute (General Statutes, § 788) provides that appeals to this court, in cases like the one at bar, shall be taken " to the supreme court of errors next to be held after the filing of the appeal, in the judicial district where the judgment was rendered." Another statute (General Statutes, § 798) prescribes a form of appeal to the Supreme Court of Errors, provides that such an appeal shall "substantially" follow that form, and shall "state the court, and the time and place of holding it." In the case at bar, the appeal could be taken only to the Supreme Court of Errors to be holden at Bridgeport on the fourth Tuesday of October, 1903. The written appeal, filed July 2d, 1903, states that the appeal is taken "to the Supreme Court of Errors, next to be holden at Bridgeport, in the County of Fairfield, within and for the Third Judicial District." The defendant claims that the

appeal is defective because it fails to state the time when the appellate court sits.

We think this claim is not well founded. In the appeal the appellate court is, in effect, described as (1) the Supreme Court of Errors, (2) to sit at Bridgeport, (3) next after July 2d, 1903. The only Supreme Court of Errors that could by law sit at Bridgeport next after July 2d, 1903, was the one to sit there on the fourth Tuesday of October, 1903; and the description in the appeal can apply to that court and to no other. The time of the sitting of the court is not expressly stated, but it is by clear implication. The defendant is informed by the appeal that it is taken to the appellate court that is to sit at Bridgeport next after July 2d, 1903, and he knew that this could only mean the court that was to sit at Bridgeport on the fourth Tuesday of October, 1903. If to the description of the appellate court in the appeal had been added the words "on the fourth Tuesday of October, 1903," they would have added nothing in substance to the description or to the information conveyed by it to the defendant. The appeal does not, perhaps, in form comply with the statute, because that seems to require that the time of the sitting of the court shall be expressly stated, and it is always safer to follow the form prescribed; but the appeal does by clear implication state the time with certainty, and in so doing we think it " substantially " complies with the statute.

The case of *Redfield* v. *Buck*, 35 Conn. 328, tried in 1868, involved a question somewhat similar to the one here presented, although the question in that case arose upon a motion in error. The statute (Revision of 1866, p. 45, § 210) then provided that motions in error should be taken " to the next supreme court of errors, which would have cognizance of a motion for a new trial, in the cause." Under this law the motion for a new trial in the above-named case could only be taken to the Supreme Court of Errors at its September term, 1867. The motion was taken simply to the " next term of the Supreme Court of Errors," and that was held to be a sufficient description of the appellate court.

The case at bar, in respect to the point now in question, differs radically from the case of *In re Shelton Street Ry. Co.*, 70 Conn. 329. In that case the appeal could be taken to any term of the Supreme Court of Errors "next to be held in the judicial district or county where the parties or any of them reside." The parties resided in different counties. The appeal might, therefore, be taken to the next term of the appellate court in one county, or in some other county, at the will of the appellants. The appeal in that case was simply taken to "the Supreme Court of Errors," without specifying either time or place. It gave the appellee no certain information as to the court to which the appeal was taken, but left him to ascertain that court at his peril. There is nothing in that case inconsistent with our decision in the present case. The plea in abatement is overruled.

It remains to consider the case upon its merits. The reasons of appeal are based upon claimed errors in the rulings upon evidence, and in the charge. The material facts claimed to have been proved by the plaintiff may be stated as follows: The defendant operates street-railway lines in, and runs electric cars through, State and Elm streets in New Haven, and Elm Street runs in a northwesterly direction from State Street and at right angles thereto. About five o'clock in the afternoon of August 14th, 1902, the plaintiff, in conversation with one Comstock, was standing on the sidewalk, on the northwest corner of Elm and State streets, about twelve inches from the edge of the sidewalk, facing away from Elm Street and partly up State Street. At this corner there was an electric light pole and a police telephone box, about six feet apart, and the plaintiff stood between them. The running-boards of certain of the cars used by the defendant on its lines running around this corner—that is, the running-boards of the long double-truck cars—overlapped the sidewalk at one point a distance of two feet; but the plaintiff offered no evidence as to how far such boards overlapped the sidewalk where he stood, "except the fact that the plaintiff was struck by the running-board of a car." There was a great deal of travel at this corner, cars were

passing there at least once every minute and bells were being constantly rung on such cars. Just before the accident to the plaintiff a short car passed the plaintiff safely while he stood as above described. Shortly thereafter one of the long cars came down State Street, approached said corner, slacked its speed, rang its gong, and passed around said corner slowly. The front and about one half of the body of the car passed the plaintiff in safety, " when the running-board of said car, at or near the middle of the car, as it rounded the curve, struck the calf of the plaintiff's leg, causing serious injuries to him and endangering his life. The car was not stopped after the injury, but continued on its course." Such is the plaintiff's case.

The defendant claimed to have proved, in substance, these facts: That its charter authorized it to build and operate said railway lines. The tracks were built upon the layout and according to the plan approved by the city authorities, in the manner required by law. Owing to the presence of a double-track railway in State Street leading into Grand Avenue, "it was impracticable to place said railway tracks so that the cars used thereon would overlap said sidewalk less than they in fact did." The radius of the curve opposite the point of the corner " was flattened to one hundred feet, to diminish the overlap as much as possible." The car that struck the plaintiff was of a kind in common use in New Haven and elsewhere. Their use had become necessary owing to the increase of traffic; they had been used on the lines in question for three or four years, and elsewhere for four or five years; and public necessity and convenience required their use on the lines here in question. When upon a straight track, the running-board of such car projected about nineteen inches beyond the rail; and at the place of the injury the running-board, at the center of the car, extended forty-two inches outside of the rail. At the point where the overlap was greatest at this corner, the running-board projected over the curbstone and over the sidewalk for a distance of twenty-five inches. The amount of said overlap constantly diminished after the car passed that point,

and as it approached the place where the plaintiff stood. The overhang at the point where plaintiff claimed to have been standing was very little; "but owing to said point not being exactly determined, it was impossible to prove the exact amount thereof." The defendant also claimed to have proved that it had been guilty of no negligence as alleged in the complaint, and that the plaintiff, in remaining in a position of danger after due notice of the approach of the car, had been guilty of contributory negligence. Such in brief was the defendant's case.

The plaintiff requested the court to charge the jury as follows : " (a) Plaintiff had a right to stand on the sidewalk conversing, and was not under obligation to watch lest trolley cars should extend over the sidewalk and strike him. (b) If defendant operated a car which extended over the sidewalk, it was bound to the utmost care and diligence to prevent any injury thereby to any person standing on the sidewalk. (c) If the defendant operated a car which extended over a part of the sidewalk it was bound to see to it that no injury occurred to any person standing on the sidewalk. (d) If the plaintiff while standing on the sidewalk was injured by the car of the defendant, he is entitled to recover, unless you find that he wilfully incurred the injury, or was grossly negligent. (e) Defendant had no legal right to so maintain its tracks and run its cars as to do injury to persons standing on the sidewalk, and therefore your verdict must be for the plaintiff, unless you find that the plaintiff wilfully courted the danger, or was grossly negligent. (f) If the jury find that the defendant was in fault they may assess punitive damages, and may take into consideration plaintiff's expenses in the trial of this case."

Some of the reasons of appeal are based upon the failure of the court to instruct the jury according to the import of these requests. The last request (f) is of no importance upon this appeal, inasmuch as the verdict was for the defendant; but clearly, as the complaint alleged no malicious, culpable, or wanton misconduct on the part of the defendant, but merely that its servants were negligent in improperly.

operating the car, the plaintiff was not entitled to punitive damages. *Maisenbacker* v. *Society Concordia*, 71 Conn. 369.

Request (a) in effect asked the court to charge the jury that because the plaintiff was on the sidewalk, he was under no duty to exercise reasonable care with reference to the approach of a car around the curve in question. We think the court did not err in failing so to charge. Standing where the plaintiff did, so near the edge of the sidewalk, it was, we think, his duty to exercise some degree of care with reference to the street traffic. He was not, standing there, as free from all duty with regard to that traffic as he would have been in bed; yet that is substantially the import of this request. Standing in the street it would have been his duty to exercise a higher degree of care, perhaps, than would be required of him on the sidewalk; but even on the sidewalk he is not entirely free from the duty to exercise some care with reference to street traffic. Whether on street or sidewalk he was bound to exercise some care, the degree of care varying with the circumstances. In short, he was bound, standing where he did, to exercise such care as would be exercised by a reasonably prudent man in like circumstances; and this is just what the court charged. It said: " The law also requires the traveler upon the highway to exercise reasonable care to avoid injury to himself; and this plaintiff on this sidewalk, to avoid danger to himself, was in duty bound to exercise such care as would be exercised by a reasonably prudent man under all the circumstances." This was the only instruction that could properly be given for the guidance of the jury upon the point in question; and applying this instruction to the facts as they should find them, it was sufficient for their guidance in determining whether the plaintiff acted as a reasonably prudent man would have acted under like circumstances.

Requests (b), (c) and (d), may mean that the defendant was bound to exercise toward the plaintiff the same degree of care it would be bound to exercise toward one of its passengers; or they may mean that it was bound to exercise

toward him such a degree of care as a reasonably prudent man would have exercised under the circumstances. If they mean the former degree of care, we think the court was justified in refusing so to charge; while if they mean the latter, that is just what the court told the jury, as is shown by the charge upon this point hereinafter quoted. In either case, the plaintiff has no cause to complain upon this point. Besides, these requests seem to imply that the plaintiff was himself under no duty to use reasonable care. The court did not err in not charging them.

Request (e), as a whole, the court was not bound to charge, for the reasons given with reference to requests (b), (c) and (d). The court did charge the first part of this request, in substance, and properly refused to charge the last part.

Coming now to the charge as made, as to the degree of care required of the defendant, the court charged in substance as follows: It was the duty of the defendant, in running its cars on the highway, to use reasonable care to avoid injury to persons using the highway; and what is reasonable care depends upon the circumstances of the case; and as the danger of accident increases, the degree of care should also increase. It was the duty of the defendant to the plaintiff to exercise such care as would be exercised by a reasonably prudent man under all the circumstances. "At places where there is more danger, the speed must be greatly reduced, and the gong should be sounded to give warning; and if the defendant company was operating a car the running-board of which, at curves, extended over a part of the sidewalk, it was its duty to use reasonable care and diligence to prevent injury thereby to any person standing on the sidewalk at such place; and it is the duty of the motorman operating such car to use reasonable care to avoid injury to persons on the sidewalk at places where there is such overlapping of the running-board; and reasonable care may mean great care, depending upon the circumstances, and the greater the overlapping, the greater degree of care must be exercised. It is his duty to use reasonable care to avoid

injury to persons lawfully using the public street, whether crossing it, or whether on the sidewalk."

We think this was a fair statement of the law relating to the duty of the defendant and its servants toward the plaintiff in this case, and that it was well adapted for the guidance of the jury. The court charged the jury, in substance, that a motorman operating an electric street car has the right to presume that upon the approach of the car, due warning being given of such approach, an adult person on the track, or in a position near the track where he is liable to be struck, will exercise reasonable care for himself, and will remove himself from his position of danger as the car approaches. The plaintiff complains of this, but we think without sufficient reason. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 218. The plaintiff in his brief concedes that such a presumption exists with reference to a person in the street, as distinguished from the sidewalk; but he contends that no such presumption exists with reference to one standing on the sidewalk. This distinction is not tenable as applied to a case like the present. The plaintiff was in fact in a position of danger, and the motorman, upon the facts in this case, had a right to presume that plaintiff was aware of it and would govern himself accordingly; he had a right to so presume, as the court told the jury, "until it is apparent, or by the exercise of reasonable diligence would be apparent to him, that the person is in danger, and is not aware of the danger, or is so situated that he cannot avoid the danger." The jury were properly instructed upon this point.

The plaintiff also complains of that part of the charge, hereinbefore quoted in connection with request (a), to the effect that the plaintiff, standing where he did, was bound to use reasonable care. For the reasons heretofore given we think the court did not err in so charging. The court charged, in substance, that the defendant claimed to have proved certain facts, to wit, that the position of its tracks were authorized by its charter and the laws of this State, that it was running a kind of car commonly in use, that the gong was sounded, and the car came around the curve at a

slow rate of speed, at the time of the accident. The plaintiff complains of this because the court did not add a caution " that these claims of the defendant were not sufficient, or probably sufficient, as plaintiff was standing on the sidewalk." The court was not asked to add any such caution, and it clearly did not err in failing to do so in making a statement of the facts which the defendant claimed to have proved. The court, in other parts of its charge, sufficiently called the attention of the jury to the fact that this was a case where the plaintiff was, when injured, standing upon the sidewalk and not in the street.

The court further charged, in substance, that if the car that struck the plaintiff was of the kind in general and ordinary use by other companies engaged in the same business as the defendant, " the mere use thereof as a street car at such curves as the one in question, in a manner in all other respects careful and proper," would not of itself constitute negligence. The plaintiff complains of this, but we think without reason.

This brings us to the last reason of appeal relating to the charge, and that is to the effect that the whole charge as given is erroneous. This reason is too general, and raises no question that we are bound to consider; but looking carefully over the charge as a whole, we think the general assignment has no foundation in fact.

The rulings upon evidence will now be considered. Shepard, a witness for the plaintiff, testified on his direct examination that he saw the accident and helped to rescue plaintiff from the car as he was being dragged toward the electric light pole. He was asked later by the plaintiff how much room there was between the handle of the car and that pole, and answered, about eighteen inches. He was then asked this question: " Can you tell from recollection whether there was room for the body of Mr. Hayden (the plaintiff) between the car and the post." The court, on objection, excluded the question, and we think it ruled correctly. The witness had already, in effect, answered the question ; and besides, it does not appear that the distance between the

Hayden v. Fair Haven & W. R. Co.

car and the pole was a material fact in the case. The plaintiff was not injured by the proximity of the pole to the car.

Comstock, the man with whom the plaintiff was talking when injured by the car, was a witness for the plaintiff, and on his direct examination was asked "whether a motorman on State Street could have seen Mr. Hayden (the plaintiff) where he stood?" This was objected to as calling for a conclusion, without showing that the witness was in any position to draw a conclusion. The court excluded the question, and properly excluded it on the ground stated. Besides, the exclusion did the plaintiff no harm, for it was "conclusively proved by the plaintiff, and appeared to be conceded by the defendant, that there was an unobstructed view from where the plaintiff stood up State Street one hundred to two hundred rods."

The defendant offered in evidence, and the court admitted, an order of the court of common council of New Haven, approved by the mayor December 19th, 1898, permitting the defendant to locate its tracks at the point in question, as shown upon four blue prints attached to the order, and relating to the location of the tracks at the time and place of the injury. The plaintiff objected to the reception of this evidence, but stated no reasons therefor. The plaintiff claimed that the location of the tracks at the point in question was a negligent location, and he attacked the right of the defendant to maintain it there. The evidence objected to showed that it was the only location that had been given them by the lawful authorities, and that it was, to that extent at least, a lawful location. The record does not disclose that the court erred in admitting this evidence.

The reasons of appeal founded upon the rulings of the court in case of the witnesses Kelly and Punderford are without merit and need not be discussed. Indeed, in the Kelly case no exception was taken to the rulings. This disposes of all the reasons of appeal based upon rulings upon evidence.

There is no error.

In this opinion the other judges concurred.