THOMAS J. RILEY, ADMINISTRATOR, *vs.* THE CON-
SOLIDATED RAILWAY COMPANY.

Third Judicial District, New Haven, January Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

Negligence in the operation of a trolley-car, as in all other matters, is
the failure to use ordinary care and prudence under the circum-
stances.

One may fairly assume that another who is aware of impending danger
will use reasonable efforts to save himself; and so, also, one who
believes, upon reasonable grounds, that another is aware of a
source of danger, may fairly govern his own action in view of that
belief.

A motorman operating a street-railway car, or a chauffeur driving an
automobile, is not entitled to assume that if he sounds his bell,
whistle, or horn, all the world within hearing will take notice that
an engine of possible destruction is approaching and with reason-
able promptness will resort to measures of self-protection, at all
events until he has reasonable grounds for believing that the
warning is heeded or the presence of the danger recognized, and
that the persons threatened are competent to act and in a position
to protect themselves by the exercise of ordinary prudence on
their part.

In the present case the plaintiff's intestate while driving on a trolley
track in the highway during the night was run into from the rear
by a car and received injuries from which he shortly died. It did
not appear that any warning signal was given, that the motorman
knew anything about the decedent, or had the slightest reason to
suppose that the latter was aware of the approach of the car, or
that he could have escaped it by any degree of diligence after the
presence of an object on the track had been revealed to the motor-
man. *Held* that under these circumstances an instruction to the
effect that the motorman, on giving due warning of the approach
of the car, might presume that an adult on or near the track
would remove himself to a safe place, was inappropriate and mis-
leading, in that it was calculated to give the jury an impression
that the motorman owed a less duty than he really did.

The most that one is entitled to presume, in regulating his conduct
toward others in a dangerous situation, is that they will exercise
reasonable care on their own part—not that they will escape the
threatened danger at all hazards. This principle works both ways,
is fair to each, and accords to neither a superior right.

The cases of *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, and *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, distinguished.

Argued January 22d—decided April 15th, 1909.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *Error and new trial ordered.*

*George E. Beers* and *Frank S. Bishop,* for the appellant (plaintiff).

*Harry G. Day* and *Thomas M. Steele,* for the appellee (defendant).

PRENTICE, J. This action arises out of the same state of facts as did *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 71 Atl. 356, and they are stated in connection with that case. The plaintiff's intestate was Munson, the occupant of the wagon upon that occasion. The more important of the many assignments of error relate to the issue as to the defendant's negligence. Negligence in the operation of a trolley-car, as in all other matters, consists in the failure to use ordinary care and prudence under the circumstances. These circumstances are oftentimes many, and they are here. Among those of special significance are the conceded ones, that the car was being operated over rails laid in a highway but outside the macadamized path, that it was in the night season, that the highway and road-bed at the place of accident were straight and level for a long distance, that the vicinity was a sparsely settled country neighborhood, that the car was a long and heavy one, equipped with an air brake and a sixteen candle-power incandescent headlight, and that the car ran into the wagon from behind. It was also substantially conceded that the wagon was at the time moving slowly, and had for some little distance been

proceeding with one wheel within the rails. No person, as far as known, except the motorman, witnessed the accident. Under these circumstances much of the contention in the case naturally centered about questions of speed, the watchfulness of the motorman, and his exercise of his power of control over his car, all factors for which the motorman was responsible, and also about the matter of the company's provision of artificial illumination by means of a headlight or otherwise. The duty of the motorman, in the one case, and of the company, in the other, in respect of these matters, thus became matters of importance, and it was all important that the jury should obtain a correct conception of these duties from the instructions of the court. For the most part the charge embodied clear and accurate statements. But it contained the following, which are complained of:—

"If you find that the motorman was running his car at a rate of speed reasonable under all the circumstances then and there existing, and keeping a reasonable lookout, he was not negligent in failing to anticipate that a team would be proceeding, in the night, off from the macadam pavement upon the track in front of his car."

"It was the duty of the motorman, while operating his car, to keep a diligent lookout for persons traveling in the highway so as to avoid injury to them; but while this is so, such motorman has a right to presume that upon the approach of the car, due warning being given of its approach, an adult person on the track or near the tracks, and in a position where he is likely to be struck or injured, will remove himself from his position of danger as the car approaches, to a point of safety."

It is contended that the jury must have derived, from the first paragraph quoted, the impression that the motorman, in determining his course of action, was not required to take into account the contingency that a team might be traveling as Munson's was; that in the operation of his car

he might dismiss from his mind the possibility that some user of the highway in the enjoyment of his rights as a traveler might be in the path of the car, until it should be disclosed to the motorman's senses that such was the fact; and that his duty would be performed if he thereafter used reasonable care to avoid an accident. We have no occasion to inquire whether the language of the court is fairly open to this charge, since the objection to the second of the quoted paragraphs is well made.

The particular language to which this objection is addressed was taken in a large measure from the opinion in *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, 364, 56 Atl. 613. In that case, however, the circumstances were such that Hayden was presumptively aware of the proximity of the car which hit him, and the language of the opinion was predicated upon the fact that the motorman was justified, upon the facts of that case, in assuming that Hayden was aware of his danger. Such being the situation, we said that the motorman was entitled to presume that Hayden, being an adult, and, as the motorman had good reason to believe, aware of his danger, would act the part of common prudence to save himself from injury. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 35 Atl. 1126, to which reference is made in the *Hayden* case, presents the same conditions. The motorman's senses told him that the driver of the wagon was an adult competent to drive a team, and he had good reason to believe that the latter was aware of the approach of the car. In this case the statement of this court, made with reference to this situation before it, is wrested from its context, and given to the jury as a statement of a general principle of broad application, or at least as one applicable to the situation in this case. It is clear that as a statement of a general principle of universal application it is incomplete, and needs qualification. It is a fair assumption for one to make, that another who is aware of impending danger will use reasonable efforts to

save himself. It is also fair that one who has a reasonable basis for the belief that another is aware of a source of danger should be entitled to govern his action upon the assumption that the other is aware of it. Where, therefore, the situation is that the person in danger through the operation of an agency under the control of another has the means of self-protection open to him by the exercise of reasonable care, and the latter person entertains the belief, founded upon reasonable grounds, that the threatened person is of capacity to avail himself of such means, and is aware of his danger, instructions such as those in question would be unobjectionable. This case presents no such situation. A motorman operating a car, or a chauffeur an automobile, is not entitled to assume that if he sounds his bell, whistle, or horn, all the world within hearing will take notice that an engine of possible destruction is approaching, and with reasonable promptness will resort to measures for self-protection. *Irwin* v. *Judge,* 81 Conn. 492, 71 Atl. 572. He can make no such assumption in justification of not taking reasonable precautions in view of a contrary contingency, until at least he has reasonable grounds for believing that his warning is heeded or the presence of the danger recognized, and that the persons threatened are competent and in a position to protect themselves by the exercise of ordinary prudence on their part.

The facts of this case were such as to make the instructions in question entirely inappropriate, and so inappropriate that they were calculated to mislead the jury into the belief that the motorman owed a less duty than he really did. It did not appear that any warning signal was given, that the motorman knew anything about the occupant of the wagon, that he had the slightest reason to believe that the latter was aware of the approach of the car, or that the latter, by the exercise of any degree of diligence, could have driven from the tracks in safety after the presence of an object upon them was revealed to the motorman.

We have thus far assumed that the statement of the court was in substance that of the opinion in the *Hayden* case. It, however, omitted an important qualifying phrase. The presumption which it was there said a motorman was entitled to make, was that the person whose safety was endangered would exercise reasonable care for his safety, and remove himself from a position of danger. The court here said that he might presume that a person on or near the track, and thus in a place of danger from the passage of a car, would remove himself as the car approached. The difference thus indicated is a very vital one. The most that one is entitled to presume, in regulating his conduct toward others, is that they will exercise reasonable care in their conduct. That must furnish the basis for the government of his action. He cannot assume that another will remove himself to a place of safety at all hazards, and permit him to go on his way at his will. The principle which we have been discussing is one which works both ways. It entitles both parties in a dangerous situation to presume a course of reasonably prudent conduct on the part of the other, and to determine their respective courses of action upon that basis. It accords to neither, however, any superior right, and neither is entitled to assume that the other will do all that safety demands.

The plaintiff complains of the instructions upon the matter of lights. Unfortunately the trial was had before the opinion in the *Currie* case was handed down, and neither counsel nor the court had the benefit of what was therein said upon this subject. It would serve no useful purpose to enter upon a consideration of the objections presented and the analysis of the charge which would thus become neces sary, since there must be a new trial for other reasons, and the opinion in the *Currie* case contains a comprehensive statement of the law, and is adequate to guide the future progress of the cause.

The numerous objections to rulings upon the admission

of testimony call for no consideration. Most of the questions presented will in all probability not arise upon a second trial, and no important principle beyond those settled by the *Currie* case is involved in them.

There is error and a new trial is ordered.

In this opinion the other judges concurred.