EDWARD STROSNICK *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, April Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

The plaintiff while riding on the tailboard of his employer's motor-truck,
    or while in the act of resuming his seat thereon which he had tem-
    porarily left to follow the truck on foot over a bridge, was injured
    by a head-on collision between the truck and a trolley-car of the
    defendant.   By direction of the trial court the jury returned a ver-
    dict for the defendant, and the plaintiff appealed. *Held* that the
    existence of contributory negligence, which was the main defense,
    was not so clearly established by the evidence as to warrant the
    withdrawal of that issue from the jury's consideration, and that the
    trial court was therefore in error in directing a verdict for the de-
    fendant.
A third person has a right to assume that those in control of vehicles
    which are rapidly approaching each other upon the highway in plain
    sight, will act as ordinarily prudent men should, and to regulate
    his own conduct in view of such assumption.

Argued April 11th—decided May 28th, 1918.

ACTION to recover damages for personal injuries al-
leged to have been caused by the defendant's negligence,
brought to the Superior Court in New Haven County
and tried to the jury before *Curtis, J.;* the court directed
a verdict for the defendant, and from the judgment
thereon the plaintiff appealed. *Error and new trial
ordered.*

At the time the plaintiff received his injuries, an
automobile truck, owned by L. Armstead & Son and
driven by one of the members of that partnership, was
proceeding northerly from New Haven between Mt.
Carmel and Cheshire.   It was traveling upon the main
highway known as Whitney Avenue.   The plaintiff,
an employee of Armstead & Son, was going with the
truck and riding upon the tailboard or rack with his
feet hanging over behind.   The accident, out of which

the present action arose, occurred in the immediate vicinity of a bridge known as Willow Bridge, which spans a stream crossed by the highway. The ordinary traveled part of the highway lies upon its east side. Upon its west side and within its limits is laid the single track of the defendant. This track is raised a foot or more above the traveled path and is separated from that path by a shoulder of earth. The highway at this point is straight for a considerable distance on each side of the stream, so that there is no physical obstruction to a clear view of vehicles or cars upon the highway or tracks to or from any point within a distance of five hundred feet southerly of the stream and fifteen hundred or more northerly of it. The highway to the north of the stream descends toward it at an easy grade. Across the stream is a bridge designed for ordinary highway travel. Close beside it is another bridge, built and designed for the exclusive use of the defendant's cars.

The plaintiff offered evidence to prove the following additional facts: On the day in question the ordinary traveled path of the highway was rendered practically impassable for automobile travel, through accumulations upon it of snow which had fallen a week or more previously. By reason of these accumulations motor-vehicles were accustomed, as they had been at all times when fallen snow impeded travel along the ordinary traveled way, to make use of the raised trolley-tracks from which the snow had been cleared. Upon either side of these tracks on the day in question, the snow, which had been removed therefrom, was banked up so that passage between the tracks and the ordinary traveled roadway was rendered difficult, save at points where users of the tracks had cleared away turnouts to enable trolley-cars and other vehicles using the tracks to pass each other. At the time of the accident

the general course of travel, other than that in sleighs, was, and for several days had been, along the trolley-tracks and across the trolley-bridge. This was not invariably so, however. In some cases vehicles approaching the bridge along the tracks turned back upon the main traveled way just before reaching the bridge, crossed the highway bridge, and then returned to the tracks.

The truck in which the plaintiff was riding followed the former course. It approached the stream along the trolley-tracks and crossed on the trolley-bridge. As it neared the bridge the plaintiff jumped from the truck and walked over the bridge behind it. After the bridge was crossed he looked up and saw a southbound trolley-car coming into view as it rounded the curve at the top of the hill some fifteen hundred to eighteen hundred feet distant. He continued walking behind the truck as it proceeded along the tracks to the north. He paid no further attention to the car, and shortly started to climb back to his former position on the truck when, at a point some fifty to seventy-five feet beyond the bridge, the car and truck collided and he received his injuries.

After the truck had passed the bridge it followed the tracks for the purpose, as its driver testified, of reaching a turnout some three hundred feet ahead. Before reaching that point he saw, as he said, that the car was not going to stop, and thereupon started to swing out to the right to avoid a collision.

The collision occurred at some time between 6:30 and 7:10 o'clock on the evening of March 13th, 1916. The plaintiff and driver of the truck testified that the lights of the truck were lighted before the stream was reached. The latter also testified, in answer to a question as to the condition of light, that it was plain, the ground all white with snow, and if he remembered aright, that the moon was nearly full.

The plaintiff's witnesses testified that the trolley-car was going at a high rate of speed; the defendants, that it was running from twenty-five to thirty-five miles an hour, a rate neither unusual nor improper considering the time and place.

*George E. Beers*, with whom was *Claude B. Maxfield*, for the appellant (plaintiff).

*Harrison T. Sheldon* and *Charles E. Clark*, for the appellee (defendant).

PRENTICE, C. J.   It is too clear to justify discussion, that the evidence bearing upon the issue as to the defendant's negligence was such as to entitle the plaintiff to its submission to the jury.

The question whether or not that which related to the issue as to the plaintiff's contributory negligence, is one presenting more substantial difficulty.   Had the plaintiff been walking upon the trolley-tracks with nothing intervening between him and the trolley-car, which, as he says, he saw bearing down upon him when it was some one quarter of a mile or more distant, his conduct in not stepping aside, as he easily might, into a position of safety, would have been irreconcilable with the exercise of ordinary prudence.   Such, however, was not the situation in which the plaintiff found himself. That situation, as the jury might have found it, was one in which, between him and the trolley-car, was an automobile truck immediately preceding him, and traveling in the darkening light following sunset along the trolley-tracks in the same direction as himself and with its lights lighted.

Under these conditions a determination of the reasonableness or unreasonableness of the plaintiff's conduct involved a consideration of what assumptions and de-

ductions he was fairly entitled to make and act upon in respect to the imminence of danger to himself calling for independent action upon his part when, having become aware of the approach of the trolley-car, he, without further observation, resumed his place upon the rear of the truck or attempted to do so. Was he not, for instance, in view of the distance between the truck and the trolley-car, when their respective drivers ought to have become aware of each other's approach upon the same line of travel, reasonably entitled to assume that a collision was not to be anticipated? He was entitled to assume that the persons in control of the situation, to wit, the motorman and driver of the truck, would act as ordinarily prudent men should, and to regulate his conduct accordingly. *Andrews* v. *New York & N. E. R. Co.*, 60 Conn. 293, 299, 22 Atl. 566; *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 218, 35 Atl. 1126; *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, 364, 56 Atl. 313; *Riley* v. *Consolidated Ry. Co.*, 82 Conn. 105, 108, 72 Atl. 562. Was he not reasonably justified in assuming and acting upon the assumption that they would not only so act, but also that so acting, the truck would have an opportunity to get clear of the tracks before the car should attempt to pass it, and that, therefore, he was in no real danger while remaining with the truck? Was the situation, as it presented itself to him, so fraught with possibilities of danger that the dictates of ordinary prudence should have led him to fly from the tracks for safety? To what extent, if at all, does his failure to observe the movements of the approaching car after he first saw it, evince a lack of prudence on his part, and what bearing and significance ought to be given to that failure in passing judgment upon the plaintiff's conduct viewed in all its aspects? These are questions of large importance in a determination of whether or not the plain-

tiff was negligent, and their answers are not so clear that only ones unfavorable to the plaintiff could reasonably be given. We are of the opinion that they, and the ultimate question of the plaintiff's negligence or freedom from negligence, with which they are closely involved, should not have been withdrawn from the jury's consideration by the direction of a verdict for the defendant.

There is error and a new trial is ordered.

In this opinion the other judges concurred.