AL GROSS *vs.* BOSTON, WORCESTER AND NEW YORK STREET RAILWAY COMPANY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued October 11th—decided December 7th, 1933.

*Philip Robert Shiff*, for the appellant (named defendant).

*Wilson C. Jainsen*, for the appellee (plaintiff).

*Louis M. Schatz*, for the plaintiff Blatt in a companion case.

On the brief, *Jacob Beresnerkoff* for the plaintiff Mandell, and *Leo J. Dowling*, for the plaintiffs Senior *et ux.*, in companion cases.

HINMAN, J. On the evening of September 5th, 1932, the plaintiff and six other persons were passengers in a bus belonging to one Aselton, traveling from Boston to Hartford, which was in collision with a bus of the named defendant on Lake Bridge in Worcester,

Massachusetts. Actions brought by the plaintiff and four other passengers against both the named defendant and Aselton were tried together and verdicts returned and judgments rendered for the several plaintiffs against the company and in favor of Aselton. By stipulations the record in the instant case is to be treated as that in each of the others and the decision herein is decisive of all of the appeals. "Defendant" in this opinion refers to the appellant, Boston, Worcester and New York Street Railway Company. Error is assigned in the refusal to set aside the verdict; also in failing to charge that the operator of appellant's bus had a right to assume, until the contrary appeared, that operators of other motor vehicles on the highway would act in a careful and lawful manner, that the operator of a motor vehicle proceeding directly ahead of him would give a timely warning or signal of his intention to stop, slow down, or change his direction, that no cars would be parked on the bridge contrary to local ordinances and other regulations prohibiting it, and that the driver was under no duty to anticipate that the car directly ahead would, without warning, collide with a car parked on the bridge.

Offers of proof by the plaintiff material to the assignments pertaining to the charge, as disclosed by the finding, were in substance as follows: As the bus in which the plaintiff was riding approached the bridge where the accident occurred a heavy rainstorm was in progress. The bridge is approximately nine hundred feet in length, straight, and forty-four feet wide between curbs. Double trolley tracks were located in the center of the highway. The surface was of wooden blocks which were slippery and dangerous for vehicular traffic when wet. The bridge was well lighted by twenty large arc lights. The defendant's bus started a trip from Worcester to Boston about ten

o'clock. The operator was familiar with the bridge and its surface and knew that it was wet and slippery. After passing an intersection before reaching the bridge he increased speed and, as a result, while on the bridge lessened the distance between the bus and a Plymouth automobile which was traveling in front of him in the same direction. A Chevrolet car, disabled because of some mechanical defect which made operation impossible, was parked near the center of the bridge close to and parallel with the south curb, facing easterly and without lights. It had been in this position four or five minutes before the accident. The driver of the defendant's bus did not see this parked car until after the collision. The Plymouth collided with it and came to a stop about ten feet to the rear of it, its left rear wheel extending a foot or two beyond the left rear wheel of the Chevrolet. There was sufficient room between the center line of the highway and the left rear wheel of the Plymouth for the defendant's bus to pass. The bus continued on until about ten feet away from the Plymouth when the operator swung to his left to avoid and pass it and in doing so crossed to the left of the center of the highway and came in contact with the vehicle in which the plaintiff was riding, which was to its right of the center of the highway.

The defendant offered evidence that its bus was traveling to the right of the center of the roadway, at not more than thirty miles per hour, and maintained a distance of thirty feet behind the Plymouth. The Plymouth crashed into the left rear of the parked Chevrolet, the rear end skidded backward and sidewise to the left and toward the center of the road and the front end veered to the right, and the car finally came to a stop some ten feet behind the Chevrolet, its rear end extending out into the roadway a distance of

fourteen feet. The driver of the Plymouth gave no signal or warning that it was slowing down or stopping prior to its collision with the Chevrolet, and the operator of the defendant's bus had no warning or indication that it was not being operated in a careful manner, or that it would not proceed in the regular course of travel, until it began to bound back into the path of the bus. The defendant's operator applied his brakes and swung to the left, thereby avoiding a collision with the Plymouth which otherwise would have resulted, and the bus traveled no more than twenty feet from the time it turned out to its left until it came into collision with the Aselton bus at a point less than five feet to the north of the center of the roadway. Parking on the bridge was forbidden, signs to this effect being posted all along the bridge on both sides.

It thus appears from the finding that the car in which the plaintiff was riding was traveling upon its right of, although near to, the center of the street, that the defendant's bus encroached a few feet to its left of the center line and this resulted in the collision between the two cars. It is evident, also, that the change of direction which preceded and led to this encroachment was precipitated by the sudden stopping of the Plymouth car, whereupon, as a means of avoiding collision with it, the defendant's operator swerved the bus to the left to pass the standing cars. In making this detour the swing taken was so wide as to carry the bus beyond the center line a distance comparatively short but sufficient to occasion the collision. In this situation, a vital consideration in the determination as to the defendant's liability was whether its driver was or was not negligent in so doing.

A Massachusetts statute provides that "when persons traveling with vehicles meet on a way, each shall

seasonably drive his vehicle to the right of the middle of the traveled part of such way, so that the vehicles may pass without interference." General Laws, 1921, Chap. 89, § 1. While the rule obtaining in Connecticut is that violation of such a statute constitutes negligence, and, if a proximate cause of injury, renders the violator liable, the decisions in Massachusetts hold that violation of the statute is not conclusive but may be considered as evidence of negligence. *Clay* v. *Pope & Cottle Co.,* 273 Mass. 40, 172 N. E. 880; *Coates* v. *Bates,* 265 Mass. 444, 164 N. E. 448; *Cannon* v. *Bassett,* 264 Mass. 383, 162 N. E. 772. The defendant requested a charge to this effect and no complaint is made of the manner in which this request was complied with.

It is apparent from the record that one of the principal claims of the defendant was based upon the rules pertaining to the bearing of the existence of an emergency upon the question of negligence on the part of its driver. It requested a charge that if the jury found that this driver "was guilty of no negligence in the operation of the bus up to the time it is claimed that the automobile ahead of the bus collided with the parked car ahead of it and you should find then that a serious emergency confronted him and that his conduct was that of a reasonably prudent person thereafter, you are entitled to find he was not negligent," citing *Lemay* v. *Springfield Street Railway Co.,* 210 Mass. 63, 96 N. E. 79; *Austin* v. *Eastern Massachusetts Street Railway Co.,* 269 Mass. 420, 168 N. E. 781; *Isaacson* v. *Boston, Worcester & New York Street Railway Co.,* 278 Mass. 378, 180 N. E. 118. On this point the court charged: "This defendant contends that, even if it is found to have violated the statute in driving over the center line of the road, he was justified in so doing by reason of an emergency that

its driver did not create, resulting from accident or the negligence of another; that is, by a sudden and unexpected collision of two cars ahead of its bus. . . . If you find the defendant driver did drive to his left of the center line and you find it was because of an emergency that was not caused by his failure to use reasonable care; that, in view of the emergency, he used such care as a person of ordinary prudence confronted with such an emergency might reasonably have used, then this defendant would not be liable on this allegation, even though he violated the rules of the road. You will consider this statement carefully. The excuse, you see, is not available to one who by his negligence has created the emergency. To turn to a claim of the plaintiffs, to illustrate this, if it happens that the operation of this defendant's driver was negligent in that he was driving unreasonably close to the car ahead or without reasonable observation or control and this was a substantial factor in creating the emergency, then he cannot avail himself of the emergency as an excuse for getting over the center line of the road." Subsequently it was stated, also, "And let me say what I intended to say before in regard to the conduct of an operator confronted by an emergency, that mere error of judgment, especially when circumstances are such as to call for speedy decision and action, is not negligence. So, if you find an error in judgment as the cause of the collision when it might not have occurred had the person so erring done something else, it does not mean he was negligent, if he did what an ordinarily prudent person would have done if confronted with such an emergency."

The accuracy of this statement of the rules is not questioned, but it is asserted by the assignments of error that, in the determination as to whether or not negligence of the defendant driver created the emer-

gency, he was entitled to the benefit of certain assumptions as to careful and lawful conduct by other users of the highway, and particularly by the operators of the cars which collided in front of him. In Massachusetts, as here, a driver is entitled to assume that other users of the highway will obey the law, including lawful traffic regulations, and observe reasonable care, until he knows or in the exercise of reasonable care should have known that the assumption has become unwarranted. *Sutherland* v. *Caruso,* 258 Mass. 513, 155 N. E. 435; *Miller* v. *Connecticut Co.,* 112 Conn. 476, 479, 152 Atl. 879; *Strosnick* v. *Connecticut Co.,* 92 Conn. 594, 598, 103 Atl. 755. Instructions in substantial accordance with the present claims of the defendant would have been correct and appropriate to the inquiry as to whether or not the defendant's driver had been guilty of negligence creating the emergency with which he was confronted when the Plymouth car stopped in his path or so contributing to it as to deprive him of the benefit of this rule. The immediate question is whether a charge on this subject was so essential to an adequate instruction pertaining to this phase of the case as to render failure to give it, in the absence of a specific request, prejudicial error.

If a charge as a whole is sufficient to guide the jury in deciding the issues, error cannot be predicated on omission to charge on a specific point as to which no charge is requested. *Giddings* v. *Honan,* 114 Conn. 473, 475, 159 Atl. 271. However, if the omitted matter is essential to a proper and complete consideration and decision of the case, failure to include it, although inadvertent, constitutes error. *Pietrycka* v. *Simolan,* 98 Conn. 490, 500, 120 Atl. 310. The state of the proof as this case went to the jury was such that decision of the issue of negligence of the defendant's driver prior to the occurrence of the emergency may

well have had an important, indeed vital, bearing upon the final outcome. Upon the finding—by which the charge must be judged—the defendant, primarily, was placed in the position of having suddenly turned its bus partially onto its left-hand side of the roadway, thereby colliding with a car which was traveling on its own right side. In this situation the most likely, if not the only, means of escape for the defendant from liability on account of negligence was through recourse to the more lenient and liberal rule as to due care, which is applicable only in the case of one confronted by a sudden emergency.

The charge given, after correctly stating this rule, pointed out that its benefit "is not available to one who by his negligence has created the emergency," and the illustration cited was to the effect that it would not serve the defendant if, as the plaintiff claimed, the defendant's driver was negligent in driving unreasonably close to the car ahead or without reasonable observation or control, and this was a substantial factor in creating the emergency. In view of this, it must be assumed that one of the important issues considered by the jury was whether or not the driver was negligent in any of these respects, and the decision of this issue and its consequence for or against the applicability of the emergency rule might well have been determinative as to the defendant's liability. The driver, in his observation of conditions ahead and control of his bus, and in judging the distance at which he reasonably might follow the car in front of him, was entitled to the assumptions which we are now considering. It is to be noted further that, immediately following the portion of the charge which we have been discussing, it was stated that the driver of the car in which the plaintiff was riding "had a right to assume that the [defendant's] driver knew and

would comply with the law," including the right to assume "until he saw to the contrary, or reasonably should have seen to the contrary, that the other bus would keep to its right side of the center line." Especially in view of this, the omission to give the analogous instruction to the effect that the defendant's driver was entitled to assume that operators of cars ahead of him would comply with legal restrictions and exercise reasonable care, might well have been construed by the jury as indicating that he was not entitled to the benefit of such assumptions. Our conclusion is that the right to entertain these assumptions was, under the circumstances, so potentially important an element in the decision of the issue of his negligence that it was incumbent on the trial court, even without request, to give instructions upon it.

The task, difficult for all concerned, of the simultaneous trial of this case and of four similar actions was notably well performed. The examination and cross-examination of witnesses were conspicuously free from waste of time or effort, and although the evidence was very voluminous no rulings thereon are appealed from. The charge, as a whole, was careful and thorough; even the intensive and deliberate analysis and scrutiny to which we are justified in assuming it has been subjected for the purposes of this appeal have yielded no assignments of error other than in this single respect. A retrial of these cases should not be ordered except for a cause clearly imperative, but for the reasons above stated we are unable to escape the conviction that the probability of prejudice accruing to the defendant through this deficiency in the charge is such as to require us to regard it of sufficient consequence to compel us to order a new trial. Discussion of the further assignments of error in refusing to set aside the verdict as against the law and the evidence

and as excessive is rendered superfluous by this conclusion.

There is error and a new trial is ordered.

In this opinion the other judges concurred.